OPINION *Page 2 
{¶ 1} Plaintiff-appellant, Steven Piper (hereinafter "Piper"), appeals the judgment of the Mercer County Court of Common Pleas. For the reasons that follow, we affirm.
 {¶ 2} On September 19, 2006, Piper filed a complaint against the City of Celina for declaratory judgment and a permanent injunction claiming that Celina City Council (hereinafter "City Council") violated Ohio's Sunshine Law.[1] The case involves the City Council's discussions regarding property located at 704 North Street in Celina (also referred to as the Heffner property).[2]
 {¶ 3} The City Council had conducted a variety of meetings in which the property in question was discussed. On June 23, 2003, the City Council went into executive session for the purpose of a land acquisition. (Pl. Ex. 1). A meeting was called on July 1, 2003 to discuss the acquisition of the property, and Piper appeared and made a statement about the property at that City Council meeting. (Pl. Ex. 2). The City Council passed ordinance 32-03-O on July 1, 2003, which authorized the Safety-Service Director to enter into an eighteen-month lease agreement with Heffner Investments, Ltd. (Pl. Ex. 10). On September 13, 2004, *Page 3 
the City Council passed Resolution No. 19-04-R, a resolution of intent to appropriate 7.089 acres. (Pl. Ex. 13). In addition, the City Council passed Ordinance No. 78-04-O to appropriate 7.089 acres, more or less, from Heffner Investments on December 20, 2004. (Pl. Ex. 11). On August 27, 2007, the City Council passed Ordinance No. 44-06-O, an ordinance authorizing the Safety-Service Director to enter into a purchase agreement with Heffner Investments to purchase the property for $180,000. (Pl. Exs. 12, 12A).
 {¶ 4} The trial court held a hearing on September 5, 2007. Thereafter, the trial court found that Piper's complaint was not well taken and dismissed with judgment granted to Celina.
 {¶ 5} It is from this judgment that Piper appeals and asserts four assignments of error for our review. For clarity of analysis, we have elected to combine Piper's assignments of error.
 ASSIGNMENT OF ERROR NO. I The court erred by ruling that the Celina City Council could hold an executive session by voice acclamation vote, in violation of R.C. 121.22(G), which requires that the determination to go into executive session be made by roll call vote.
 ASSIGNMENT OF ERROR NO. II The decision is against the manifest weight of the evidence, as the court erred by finding the speculative testimony of the President of Council, Bill Sell, to be credible and by relying on Sell's testimony, and by ignoring the testimony of the Clerk of *Page 4 Council, Jackie Lacy, and by ignoring the evidence contained in the council meeting minutes regarding whether the Celina City Council went into executive session by a roll call vote.
 ASSIGNMENT OF ERROR NO. III The court erred, as a matter of law, by holding that the purpose of Ohio's Sunshine Law was to allow those in attendance at a city council meeting to hear a voice acclamation vote and discern how his/her councilperson voted on a motion to go into executive session.
 ASSIGNMENT OF ERROR NO. IV The court erred by failing to declare invalid and to enjoin the formal actions taken by the Celina City Council (1) to lease and purchase via Ordinance 32-03-O on July 1, 2003, (2) Resolution 19-04-R declaring the intent to appropriate the property, adopted on September 13, 2004, (3) Ordinance 78-04-O, adopted on December 20, 2004, to fund the payment of the taking of the property, and (4) Ordinance 44-06-O, adopted on August 27, 2007, authorizing the entering into a purchase agreement again with HIL for the HIL property that was agreed to be purchased via Ordinance 32-03-O.
 {¶ 6} In his first and second assignments of error, Piper argues that the Sunshine Law requires City Council to go into executive session by roll call vote, and that City Council went into executive session by voice acclamation rather than a roll call vote. Further, Piper argues that there is no competent credible evidence to support the trial court's judgment. Piper maintains in his third assignment of error that the trial court erred by ruling that the Sunshine Law was intended for only those who attended the meetings. *Page 5 
 {¶ 7} In Piper's fourth and final assignment of error, he asserts that this court has held that Sunshine Law violations are fatal and not curable. Further, Piper asserts that the City Council minutes from June 23, 2003 prove that the City Council did not properly go into executive session, and thus, the formal action taken as a result of the illegal meetings is invalid. Specifically, Piper argues that Ordinance No. 32-03-O and Resolution 19-04-R are both invalid formal actions resulting from the City Council's illegal meeting on June 23, 2003. Moreover, Piper argues that Ordinance 78-04-O was invalid because it resulted from the botched executive session on November 8, 2004 where, according to the minutes, the City Council went into executive session by voice acclamation.
 {¶ 8} R.C. 121.22, also known as the Sunshine Law, provides in pertinent part:
 (G) Except as provided in division (J) of this section, the members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of any of the following matters: * * *
 (2) To consider the purchase of property for public purposes, or for the sale of property at competitive bidding, if premature disclosure of information would give an unfair competitive or bargaining advantage to a person whose personal, private interest is adverse to the general public interest. No member of a public body shall use division (G)(2) of this section as a subterfuge for providing covert information to prospective buyers or sellers. A purchase or sale of public property is void if the seller or buyer of the public property has received covert *Page 6 information from a member of a public body that has not been disclosed to the general public in sufficient time for other prospective buyers and sellers to prepare and submit offers.
 If the minutes of the public body show that all meetings and deliberations of the public body have been conducted in compliance with this section, any instrument executed by the public body purporting to convey, lease, or otherwise dispose of any right, title, or interest in any public property shall be conclusively presumed to have been executed in compliance with this section insofar as title or other interest of any bona fide purchasers, lessees, or transferees of the property is concerned.
Emphasis added.[3]
 {¶ 9} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,280, 376 N.E.2d 578, citations omitted. The trial court is in the best position to observe the witnesses and weigh the credibility of the testimony. Seasons Coal Company, Inc. v. City of Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 10} The minutes to the June 23, 2003 meeting provide, in pertinent part: "[a]t 9:12 CM Bachelor made a motion to go into executive session to discuss land and negotiations of purchase, seconded by CM Nuding. Motion passed by voice acclamation." (Pl. Ex. 1). Jacqueline Lacy, council clerk for the city, testified that *Page 7 
to the best of her recollection that the vote was taken by voice acclamation. (Tr. 9/5/07 at 8).
 {¶ 11} In regards to the May 24, 2004 meeting, the minutes provide that "CM Scott made a motion to go into executive session to discuss a potential legal action against the city, seconded by CM King. Vote 7-0, Aye", and the motion to go out of executive session "passed by voice acclamation." (Pl. Ex. 8). Lacy testified that the motion to go into executive session was by roll call vote, and the vote to come out of executive session was by a voice acclamation vote. (Tr. 9/5/07 at 21).
 {¶ 12} Celina City Council had a regular meeting on November 8, 2004. (Pl.Ex. 7). The minutes from that meeting indicate that "CM Smith made a motion to go into executive session to discuss litigation involving the Heffner property," which was passed by "voice acclamation." (Id.). After reading the aforementioned into the record, Lacy testified to the following: "Q. So would that mean that in those cases, a roll call was not taken? A. Yes." (Id.)
 {¶ 13} The minutes of the December 20, 2004 meeting state, "CM Bachelor made a motion to go into executive session to discuss litigation involving the Heffner property, seconded by CM Scott. The motion passed by voice *Page 8 
acclamation." (Pl. Ex. 9) The minutes further provided that the motion to come out of the executive session was "passed by voice acclamation." (Id.). Lacy agreed that going into and out of executive session was not done by roll call vote. (Tr. 9/5/07 at 22).
 {¶ 14} According to the minutes of the July 26, 2004 meeting, a motion was made to go into executive session to discuss pending legal action on a land acquisition by a vote of 5-0, aye. Lacy testified that she does not remember the vote specifically, but that a roll call vote was taken since it was written in the minutes as a vote of 5-0, aye. (Id. at 12-13). Lacy stated, "I don't remember back in 2004; but if it's in the minutes that way, I'm sure that's how I did it." (Id. at 13). According to Lacy, she does a roll call vote by calling each council members name individually. (Id.). Lacy testified that at the August 27, 2007 meeting, in which Ordinance No. 46-06 was passed, the City Council went into executive session by a roll call vote. (Id. at 22-24).
 {¶ 15} On cross-examination, Lacy testified that she had no independent recollection of the meetings on June 23, 2003, November 8, 2004, and December 20, 2004. (Id. at 25).
 {¶ 16} William Sell, the City Council president, who took office in January 1998, testified regarding City Council meetings involving the Heffner property. (Id. at 27-28). In regards to the November 8, 2004 meeting, Sell testified that the *Page 9 
minutes of the meeting indicate that City Council went into executive session by voice acclamation. (Id. at 36). However, Sell testified:
 Q. Does that mean it was not roll call?
 A. That's what it says. I believe that we went into executive session by roll call vote.
 Q. You believe that you did?
 A. I believe that I did.
 Q. Do you have specific recall that you did?
 A. I do not, but I know that with the law director there and myself knowing that a roll call is required, I believe that there was a roll call vote.
(Id. at 36).
 {¶ 17} Further, Sell testified that the minutes of the meeting held on December 20, 2004 indicate that City Council went into executive session by voice acclamation; however, Sell testified that he does not believe the minutes are accurate. (Id. at 38-39). According to Sell, he signs the minutes after the minutes have been approved by council, "* * * [a]nd there are times unfortunately where there will be an error, and I think that — I know that that occurs. We try not to, but I know that that occurs." (Id. at 38). Sell testified: "I know that myself, I know that the Ohio Revised Code — and that the law director was there. He's very specific. I just can't imagine going into executive session by voice acclamation." (Id. at 39).
 {¶ 18} Although we do not necessarily agree with the trial court's findings, under a manifest weight of the evidence claim we will not reverse a trial court's *Page 10 
judgment that is supported by some competent credible evidence. C.E.Morris Company, 54 Ohio St.3d at 280, citations omitted. While the minutes from the meetings which occurred on June 23, 2003, November 8, 2004, and December 20, 2004 state that the vote on the motion to go into executive session was by voice acclamation, Sell testified that he did not believe the minutes were accurate. (Pl. Ex. 1, Pl. Ex. 7, Pl. Ex. 9, Tr. 9/5/07 at 38-39). Sell testified that he could not imagine going into executive session by voice acclamation. (Id. at 39). Therefore, after reviewing the record, we find that there was some competent credible evidence to support the trial court's finding that Piper failed to establish by a preponderance of the evidence that a roll call vote was not taken.
 {¶ 19} Moreover, although we disagree with the trial court's statement that the purpose of the statute is "so the public in attendance will know who voted for and who voted against the executive session", that statement is not prejudicial given our finding that there was evidence to support the trial court's finding that Piper failed to establish a roll call vote was not taken.
 {¶ 20} In addition, since we have found that there was evidence to support the trial court's finding, there was not a Sunshine Law violation and we need not discuss Piper's arguments regarding violations of the Sunshine Law.
 {¶ 21} Piper's first, second, third, and fourth assignments of error are overruled. *Page 11 
 {¶ 22} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., concurs.
[1] According to the appellant's brief, Piper filed the case on May 16, 2005 in Case No. 05-CIV-076. However, the case was voluntarily dismissed on August 3, 2006 and refiled in Case No. 06-CIV-182.
[2] This court had other cases involving the aforementioned property in appellate Case Nos. 10-07-09 10-07-10. See Heffner Investments,Ltd. v. Piper, 3d. Dist. Nos. 10-07-09, 10-07-10, 2008-Ohio-2495. Piper filed a motion to "consolidate and declare appeals moot" with this court, which we overruled.
[3] The applicable version of the statute is 2002 S 184, eff. 5-15-02. The statute has subsequently been amended.